ST. JOHNS RIVER SHIPBUILDING COMPANY, Employer, and HARTFORD ACCIDENT and INDEMNITY COMPANY, Carrier, v. C. H. WELLS, Employee, and FLORIDA INDUSTRIAL COMMISSION.

22 So. (2nd) 632　　　　　　　　　　June Term, 1945
June 12, 1945　　　　　　　　　　　　Division B
Rehearing denied July 16, 1945

*Jennings & Watts,* for appellants.

*Geo. C. Bedell* for C. H. Wells, *Raymond D. Barnes* and *William D. Barfield,* for Florida Industrial Commission, appellees.

BROWN, J.:

On appeal to the Circuit Court of Duval County from an order of the Florida Industrial Commission, reversing the order of the deputy commissioner, this case was heard before Judge Bayard B. Shields, who rendered a judgment in behalf of the claimant, from which the employer and insurance carrier took this appeal. The Court's judgment was based upon a well considered opinion, which, after stating succinctly the facts of the case, contributes a valuable discussion of the important legal questions involved. This opinion and judgment read as follows:

"This is an appeal by the Employer, St. Johns River Shipbuilding Company, and the Carrier, Hartford Accident and Indemnity Company, with cross-assignments of error by the Employee and Claimant, C. H. Wells, from an order made by the Florida Industrial Commission May 12th and filed May 15, 1944, reversing and setting aside an order of Deputy Commissioner, George B. Carter, denying and dismissing the claim of said Employee Wells for further compensation for disability under the Florida Workmen's Compensation Act.

"The Court has read the record and briefs submitted and heard the arguments of counsel for the respective parties and considered all of the same.

"The record shows, without dispute, that on December 7, 1942, the claimant Wells was injured by an accident to his left leg, or foot, arising out of and in the course of his employment by St. Johns River Shipbuilding Company, and that as a result of said injury he was temporarily totally disabled for a period of 50 1/6 weeks. This entitled Wells, under the provisions of subsection (2) of Section 440.15 Florida Statutes of 1941, to compensation during the continuance of his total disability for a period not to exceed 350 weeks at the rate of 60% of his average weekly wages. The weekly compensation allowed, as limited by Section 440.12, Florida Statutes of 1941, as it stood at the time of the injury here and before the amendment of 1943, could not exceed $18.00 per week. In this case 60% of the claimant's average weekly wages greatly exceeded $18.00 so here he could be entitled to receive for the temporary total disability compensation for 50 1/6 weeks at the rate of $18.00 per week, or $903.00. This amount has already been paid him.

"The record also shows that in addition to the temporary total disability extending over a period of 50 1/6 weeks the Claimant Wells suffered partial disability to the extent of 5% of the total loss of the use of his leg, or foot, resulting from the same injury. The deputy commissioner found from the evidence that the claimant's partial disability was permanent but the Florida Industrial Commission found it to be temporary.

"After finding that the Claimant was temporarily totally disabled for 50 1/6 weeks and thereafter permanently partially disabled to the extent of 5% of the use of his left leg or foot, the deputy commissioner, evidently seeking to apply to these facts the provisions of sub-sections (2) and (3) of Section 440.15, Florida Statutes 1941, and especially of sub-paragraph (u) of sub-section (3) of said Section, held that the claimant was entitled to compensation for his temporary total disability at the rate of $18.00 a week for 20 weeks only, or $360.00, and for his 5% permanent partial disability for 175 weeks, or $157.50, a total of $517.50, and that the claimant having been paid $903.00 had already received more than he was entitled to and that his claim for

further or additional compensation should be denied and dismissed, which, accordingly, was done.

"On appeal from the order of the deputy commissioner the Florida Industrial Commission found that the claimant as a result of his injury had suffered temporary total disability entitling him to compensation for 50 1/6 weeks at the rate of $18.00 per week. This finding was amply supported by the evidence and was correct. After stating that the claimant had been paid in full for his 50 1/6 weeks of temporary total disability, which expired December 13, 1943, the Florida Industrial Commission then found that ever since that date the claimant had been temporarily partially disabled and that he is entitled to compensation therefor at the rate of 60% of the difference between his average weekly wages before his injury and his wage earning capacity since December 13, 1943, in accordance with subsection (4) of Section 440.15, Florida Statutes of 1941. The full commission then remanded the cause to the deputy commissioner to take testimony and make findings as to the claimant's average weekly wages before the injury and his wage earning capacity during the period of his temporary partial disability and to make an award of compensation in accordance with his findings and the order and findings of the full commission.

"The only pertinent medical evidence as to the probable duration of claimant's partial disability after December 13, 1943, is contained in a letter in the record dated December 14, 1943, written by Dr. F. L. Fort of Jacksonville, who is considered one of the most eminent orthopedic surgeons in our State. He examined the claimant's injured left leg and foot and operated on his left foot. He states (page 26 of the record) 'In spite of patient's constant complaint of pain in walking there seems little else to do for this man in treatment. Whatever changes occur hereafter should be toward improvement. I should estimate that he had not more than 5% permanent partial disability in the use of his left leg.'

"Dr. Fort's evidence was uncontradicted and in view of it this Court is of the opinion that the deputy commissioner was correct in finding that the partial disabiliy of the claimant was permanent and that the full commission was in error in

finding that his disability was temporary; and therefore the Court finds that since the end of claimant's temporary total disability, December 13, 1943, he has been permanently partially disabled to the extent of 5% of the total use of his leg and not temporarily partially disabled as found by the full commission. This being so he is entitled to further compensation under sub-section (3) of Section 440.15, Florida Statutes of 1941, which deals with permanent partial disability and provides that in case of disability partial in character but permanent in quality the compensation shall, in addition to that provided by sub-section (2) of said Section 440.15, (under which the claimant here was entitled to and did receive compensation for 50 1/6 weeks for temporary total disability) be 60% of the average weekly wages for, in case of a leg lost, sub-paragraph (b), 175 weeks.

"Said sub-section (3) of Section 440.15 further provides, sub-paragraph (s), that compensation for permanent partial loss or loss of use of a member may be for proportionate loss or loss of use of the member. The evidence here shows that the permanent partial disability in the use of claimant's leg is 5% of the total.

"Said sub-section (3) of Section 440.15 further provides, sub-paragraph (u), that 'In case of temporary total disability and permanent partial disability both resulting from the same injury, which said injury is one listed in the preceding paragraph (a) through (s), inclusive, the injured employee shall be paid 60 per centum of his average weekly wage as compensation in addition to that set forth in said paragraphs (a) through (s) inclusive for a period not to exceed 20 weeks.'

"This sub-paragraph (u) was inserted in said subsection (3) of Section 440.15, by amendment, Chapter 20672, Laws of Florida, Acts of 1941. It was held by the Deputy Commissioner and is contended for by the employer and carrier that the effect of this amendment is to limit to 20 weeks the period for which an employee sustaining both temporary total and permanent partial injuries shall be compensated for the total disability though, in fact, he was totally disabled for a much longer period of time, and that at the end of 20 weeks the period for which the injured employee should be compen-

sated for permanent partial disability, here 175 weeks, should begin to run.

"If, in cases where an injury causes temporary total disability only, or temporary total disability followed by temporary partial disability, one rule to measure the compensation paid for the total disability is applied and another rule applied to measure the compensation paid for temporary total disability when it is followed by permanent partial disability, it is clear that grave injustice may result. Suppose, for instance, the employee here, Wells, at the end of his temporary total disability, December 13, 1943, had been entirely recovered from his injury, then he would doubtless be entitled under said sub-paragraph (2) of Section 440.15 to 50 1/6 weeks compensation at $18.00 a week, or $903.00. But Wells, unfortunately for him, was not entirely recovered on December 13, 1943, but was partially disabled permanently and, under the construction placed on said sub-sections (2) and (3) of Section 440.15 by the deputy commissioner and contended for by the carrier, he was entitled to compensation for his temporary total disability for only 20 weeks at the rate of $18.00 per week, or $360.00, and for his 5% permanent partial disability for a period of 175 weeks at the same rate, or $157.50, a total of $517.50, or $385.50 less than the $903.00, he would be entitled to receive for an injury less serious, causing total disability for the same length of time but followed by no partial disability at all. It cannot be believed that the Legislature intended any such unreasonable interpretation.

"It is generally conceded that the principles embodied in the Workmen's Compensation Acts are wise, beneficent and progressive. Our Supreme Court has consistently held that these Acts should be construed liberallly and all doubts resolved in favor of injured employees. The simple rules for construction of statutes require that they should be construed so as to carry out the intent of the Legislature, so as to make them just, so as to avoid unreasonable construction or absurd consequences, and so as to harmonize provisions apparently contradictory and to give effect, if possible, to every provision. Bearing these things in mind it seems reasonable to

believe that the Legislature intended that the plain words of both subsections (2) and (3) should be carried into effect and that both should stand together and that an employee so unfortunate as to be injured both temporarily totally and permanently partially in the same accident should receive in addition to compensation provided by said sub section (2) that compensation provided by said sub-section (3) and sub-paragraph (u) thereof, and that the compensation provided by sub-paragraph (u) of that sub-section (3) was not intended to be in lieu of, but in addition to, that provided by said sub-section (2). So that if an employee's temporary total disability is followed by permanent partial disability then he would be entitled under said sub-section (3) and sub-paragraph (u) thereof to be paid 60% of his average weekly wage as compensation for a period not to exceed 20 weeks in addition to what he is entitled to be paid under sub-paragraphs (a) through (s) inclusive, of said sub-section (3), that is 60 per centum of his average weekly wages for the period fixed for the indicated injury. From the evidence here the Court finds that this additional compensation should be paid for the full 20 weeks and that the permanent partial disability in the use of claimant's leg is 5% of the total. The Court therefore finds under the facts and circumstances of this case that the claimant should receive compensation for the full period he was unable to work, 50 1/6 weeks, at the rate of $18.00 per week, under said sub-section (2) and in addition under said sub section (3) should receive 5% of 60% of his average weekly wage (limited here to $18.00 per week) for a period of 195 weeks amounting to $175.50, a total of $1078.50, of which $903.00 has already been paid.

"It appears, therefore, that the finding of the Florida Industrial Commission should be and the same is hereby reversed and the St. Johns River Shipbuilding Company, by its Carrier, Hartford Accident and Indemnity Company, is hereby ordered to forthwith pay to the claimant, C. H. Wells, the sum of $175.50 as further compensation, and said St. Johns River Shipbuilding Company, by its Carrier, Hartford Accident and Indemnity Company, is hereby ordered to pay forthwith to George C. Bedell, Esquire, $250.00 as a reason-

able attorney's fee for representing said Claimant Wells before the deputy commissioner and before the full commission and before this Court, the $150.00 heretofore allowed said attorney by the full commission being included in this fee of $250.00."

We can add very little to what was said in the quoted opinion, which constitutes a fair and reasonable interpretation of the statute as amended.

The question involved is well stated by appellants as follows:

"In a case where temporary total disability and permanent partial disability both result from an injury to the foot or leg, said injury being one listed under paragraphs (a) to (s) inclusive, of paragraphs 3 of Section 440.15, Florida Workmen's Compensation Act, and where the injured person has been paid for 50 1/6 weeks as temporary total disability, and the permanent partial disability at the end of said 50 1/6 weeks is found to be not in excess of 5%, is the claimant under such facts entitled to an award for any additional money?"

Appellants say that this question should be answered in the negative. Their argument is based mainly upon their construction of the meaning and effect of paragraph (u) of sub section 3, of Section 440.15 Florida Statutes 1941 (placed in the statute by Chapter 20672, Acts of 1941), in the light of two preceding decisions of this Court. The cases referred to are Parker v. Gadsden Ice & Power Co., 141 Fla. 721, 193 So. 848, and Sweat v. Allen, 145 Fla. 733, 200 So. 348, which were decided early in 1940 and 1941, wherein we held that temporary total disability and permanent partial disability, under the then existing statute, each stood alone and carried its own recompense, and that an allowance of compensation for either of these degrees of disability precluded recovery of compensation for the other. Said paragraph (u) reads as follows:

"(u) In case of temporary total disability and permanent partial disability both resulting from the same injury, which said injury is one listed in the preceding paragraphs (a) through (s), the injured employee shall be paid sixty per

centum of his average weekly wage as compensation *in addition to* that set forth in said paragraphs (a) through (s) inclusive for a period not to exceed twenty weeks." (Emphasis supplied.)

The words, "in addition to" are significant. In addition to what? The statute answers the question: it says "in addition to that set forth in said paragraphs (a) through (s) inclusive." And what is the compensation allowed in paragraph (b) of sub section (3), construed together with the opening sentence of that paragraph? It is that "in case of disability partial in character but permanent in quality, the compensation shall, in addition to that provided by sub-section (2) of this section, be sixty per centum of the average weekly wages, and shall be paid to the employee as follows: (b) Leg lost, one hundred and seventy five weeks compensation."

Counsel for appellants contend that by putting in sub paragraph (u) the Legislature intended to modify the prior law, as construed by this Court, to the end that, when the injury was within the orbit of this amendment, an injured person would, in the discretion of the Commission, be entitled to compensation under sub-section (2) of Section 440.15 for only twenty weeks (which is assumed to be the usual healing period) in addition to his statutory compensation under sub-section (3), which, in claimant's case, permanent partial disability of leg to the extent of five per centum, runs for 175 weeks, thus entitling him under sub-section (3) to five per cent of $18.00 per week, a very small amount. This construction of the effect of the amendment is not, in our opinion, authorized by its language and would leave the workmen, in whose behalf the entire act was adopted, in a worse condition than they were before the amendment was adopted, as is so graphically shown by the opinion of the learned circuit judge. Surely this was not the intention of the Legislature.

Sub-section (2) of Section 440.15 provides that:

"In case of disability total in character but temporary in quality, sixty per centum of the average weekly wages shall be paid to the employee during the continuance thereof, not to exceed three hundred and fifty weeks, except as provided in sub section (1) of Section 440.12," which latter Section

provides that compensation for disability shall not exceed $18.00 per week.

This claimant was paid $18.00 per week under sub-section (2) for nearly a year, up to the time (December 14, 1943) when Dr. Fort determined that his disability was partially permanent. Up to that time compensation had been paid for temporary total disability. We do not find any provision of the Act requiring a different application of payments already made, for temporary total disability, when, at a later time, permanent partial disability is ascertained.

Plaintiff had been properly paid at $18.00 per week for 50 1/6 weeks, a total of $903.00, for temporary total disability up to December 14, 1943. From that time on, under the evidence, he was entitled to compensation, on the basis of a permanent partial disability of five percent, for 175 weeks, under paragraph (b) of subsection (3) of Section 440.15, and, "in addition thereto," for twenty additional weeks under said paragraph (u) of the same sub-section, making a total of 195 weeks, payable weekly, amounting to $175.50 for the 195 weeks. This was the finding of the circuit court, in which we concur.

However, the court rendered a judgment in favor of the claimant for this sum of $175.50, part of which represented the remaining future weekly payments. Counsel for the commission call our attention to Sub-section (10) of Section 440.20 E.S., which provides that whenever the commission determines that it is for the best interest of a person entitled to compensation, the liability of the employer therefor shall be discharged by the payment of a lump sum equal to the present value of the future payments of compensation computed at 4% true discount compounded annually. Their contention is that this jurisdiction is vested exclusively in the Industrial Commission, subject of course to the judicial review, and that this matter should have been referred back to the Florida Industrial Commission, or the proper deputy commissioner thereof, for the determination of whether or not it was for the best interest of the claimant. Ordinarily, the commission would determine the question arising under this Section before the claimant takes an appeal to the cir-

cuit court. This particular question was not raised either before the deputy commissioner, the full commission or the circuit court. When the case reached the circuit court for review on appeal, it was no longer an administrative matter but became a law suit, for the first time, in the circuit court. See South Atlantic S. S. Company v. Tutson, 139 Fla. 405, 190 So. 675. The statute, Section 440.27, expressly gave the circuit court power to affirm, reverse, modify or remand the cause to the commission for further proceedings. The same Section provides that an appellant should file assignments of error at the time the notice of appeal is filed. There is no assignment of error raising this question. Such a large proportion of these small weekly payments have already fallen due by lapse of time, and indeed had done so at the time the circuit court rendered its judgment in this case, that the difference between the total payments adjudged by the circuit court and the amounts of the payments falling due weekly for the period named in the judgment, is so infinitesimal that counsel for the appellants, the employer and the insurance carrier, did not see fit to raise the question, either in the court below or here; so we might dismiss the question thus raised by the commission by applying the maxim: "Deminimis non curat lex." However, we think the circuit court had jurisdiction to apply paragraph (10) of said Section 440.20 if it had been brought to the court's attention and if it had seen fit to do so. When a case of this kind gets to the circuit court the powers of that court in reviewing the action of the commission or of the deputy commissioner are quite broad. Wee Sweat v. Allen, supra. The question not having been raised in the court below by the real parties in interest, the complainant, the employer and the insurance carrier, we do not consider that we are called upon to reverse the circuit court's judgment on that score. It has long been the rule that in the absence of some good excuse, this Court is not required to determine points not raised and determined in the court below, especially as to minor mistakes that might have been obviated if the attention of the court had been called to them in due time.

Other questions have been argued in the commission's

brief which were not raised in the court below, and which we do not deem pertinent to the vital issues involved in this appeal. Therefore we will not discuss them.

For the reasons hereinabove pointed out, including the reasons stated in the opinion of the circuit court, the judgment of the circuit court is hereby

Affirmed.

CHAPMAN, C. J., THOMAS and SEBRING, JJ., concur.