408 So.2d 700 (1982)
CUMBERLAND FARM FOOD STORES and National Union Insurance Company C/O American Home Group, Appellants,
v.
Florence B. MEIER, Appellee.
No. ZZ-452.
District Court of Appeal of Florida, First District.
January 11, 1982.
Bernard J. Zimmerman and William G. Berzak of Akerman, Senterfitt & Eidson, Orlando, for appellants.
*701 Donna L. Bergh of Walker, Buckmaster, Miller & Ketcham, Orlando, for appellee.
JOANOS, Judge.
This worker's compensation appeal involves a claim for wage loss benefits under § 440.15(3)(b), Florida Statutes (1979). Due to the temporary nature of the claimant's psychiatric condition as well as the lack of evidence of a permanent impairment under the American Medical Association Guide, we find that wage loss benefits were improperly awarded and reverse.
The claimant suffered a work-related back injury in December of 1979. Since that time, she has made several attempts to return to work for her employer, Cumberland Farm Food Stores. She did light work shortly after her accident, but when she tried to resume her regular duties she began to have problems related to the back injury. Although her physician later gave his approval for claimant to return to work and claimant frequently expressed her desire to resume her job duties, Cumberland Farm continued to keep claimant on medical leave of absence status. According to the testimony of one of claimant's supervisors, Cumberland Farm would not allow claimant to return to her old position without a specific medical release stating that claimant could work 50 hours a week, stand for a long period of time, and lift cases of milk off of a stacked dolly. Claimant's physician, however, stated that claimant should avoid lifting heavy cases and that prolonged standing would bother her. The doctor also testified that he was aware of claimant's job duties and that claimant was able to obtain help with heavy lifting. With this knowledge, he felt claimant was capable of returning to work.
Cumberland Farm never received the specific medical release it requested although claimant did bring a note from her doctor stating that she could return to work with no restrictions. Cumberland Farm deemed this release to be insufficient. Despite several offers by Cumberland Farm to give claimant back her old job, claimant was later told on each occasion that she could not return to work. After the third such rejection, claimant became extremely depressed and locked herself in her room. Her family and friends finally succeeded in having her see a psychiatrist.
Claimant's treating psychiatrist testified that claimant had suffered a depressive reaction which was caused by the accident, the pain from the injury, and claimant's inability to return to work. Although a second psychiatrist testified that in his opinion part of claimant's emotional problem was due to a voluntary component, both doctors agreed that claimant was temporarily disabled due to the condition and unable to work.
Before claimant's psychiatric condition became evident, claimant had filed for temporary total disability benefits resulting from her physical condition. This earlier claim was denied by the deputy based upon the doctor's testimony that claimant was physically capable of returning to work as of February 22, 1980 and that she reached maximum medical improvement on June 12, 1980. This Court affirmed the deputy's denial of TTD on July 16, 1981.
While the appeal on the first claim was pending, claimant filed for wage loss benefits from the date of MMI to September 17, 1980 (the date of claimant's first visit to a psychiatrist). At the hearing, claimant sought temporary disability as an alternative to wage loss benefits, but the deputy stated that proper notice of a claim for temporary disability had not been given. Thus, the issue at the hearing was limited to the claim for wage loss between June 12th and September 17th. Relying upon testimony of claimant's drastic personality change and severe depression after the employer's revocation of its offer of employment as well as the evidence of the employer's stringent medical release requirement, the deputy awarded 100% wage loss benefits from June 12th to September 17th.
It is clear from the record and from the limited time frame of the award itself that the deputy awarded "wage loss benefits" for a psychiatric disability which *702 was temporary in nature. Section 440.15(3) was not intended to apply to a wage loss resulting from a temporary disability. Subsection (3) is entitled "Permanent Impairment and Wage Loss Benefits" (emphasis supplied), while subsections (2) and (4) deal with temporary total and partial disabilities. Wage loss benefits are not awardable unless the injured employee has suffered a permanent impairment, § 440.15(3)(b)1, and the benefits are calculated by determining the employee's ability to earn after MMI has been reached, § 440.15(3)(b)2. In this case, the claimant had reached MMI for her physical condition but had not reached MMI for the psychiatric problem upon which the wage loss award was based. In addition, the expert testimony was that the psychiatric condition would probably not result in a permanent impairment.[1]
When the disability which results in a wage loss is temporary, the proper procedure is to file a claim under either § 440.15(2) or (4). Although claimant attempted to assert a claim for temporary disability benefits at the hearing, the deputy found that the claim was not properly noticed and the issue of temporary disability was never determined. Our reversal of the award of wage loss benefits is, therefore, without prejudice to the filing of a claim for temporary disability for the period in question.
REVERSED and REMANDED for further proceedings consistent with this opinion.
SHAW, J., and VICTOR M. CAWTHON, Associate Judge, concur.
NOTES
[1] Even assuming that wage loss benefits had been awarded due to claimant's physical disability (as opposed to her psychiatric disability), the claimant did not make a proper showing that she had suffered any permanent physical impairment. Section 440.15(3)(b)1 requires that the existence of a permanent impairment be determined pursuant to the schedule adopted in accordance with § 440.15(3)(a)3. This latter subsection requires the use of the American Medical Association's Guides to Evaluation of Permanent Impairment pending the adoption by the Division of other acceptable standards. Since the Division has not adopted other standards, the AMA Guide should have been used to assess the permanency of claimant's physical injury, which was the type of an injury that the Guide was intended to cover. In the only medical testimony concerning permanency of the claimant's physical condition, the doctor admitted that his evaluation was not based upon AMA Guides.