466 So.2d 415 (1985)
FUCHS BAKING COMPANY and Employer's Service Corp., Appellants,
v.
ESTATE of Francis SZLOSEK, Appellee.
No. AY-231.
District Court of Appeal of Florida, First District.
April 2, 1985.
*416 Mark L. Zientz of Williams & Zientz, Coral Gables, for appellants.
Randolph W. Adams, Fort Lauderdale, for appellee.
SHIVERS, Judge.
The employer/carrier appeal from an order of the deputy commissioner awarding temporary total disability (TTD) benefits with interest, medical bills, attorney's fees, and costs. We affirm the award of TTD for the entire period from February 28, 1981 until November 17, 1983. We also find no error in the commissioner's finding that claimant's treatment by Drs. Stillman and Berntson was reasonable and necessary. However, we find an absence of a finding of "good cause" to excuse the failure to file timely medical reports as required by Section 440.13(2), Florida Statutes (1983). Affirmed in part, reversed in part, and remanded.
On April 14, 1979, claimant, a 45-year-old bakery delivery supervisor, was injured in a compensable industrial accident. He sustained both orthopedic and psychiatric injuries due to the accident and subsequently committed suicide on November 17, 1983, during the course of the litigation below. Due to claimant's unfortunate death, the facts surrounding the accident were introduced into evidence by way of the history given by claimant to his treating orthopedic surgeon and psychiatrist. The accident occurred when the delivery truck in which claimant was riding as a passenger collided with a second vehicle. The impact caused heavy racks of baked goods stacked behind claimant to slide forward, pushing claimant's head against the truck's windshield. He experienced pain in his back and legs upon impact and was taken to a hospital emergency room where he was x-rayed and released later that day. Claimant continued to suffer with severe headaches and bodily pains and began treatment by orthopedic surgeons and a chiropractor on the day following the accident. On September 20, 1979, he began treatment with Dr. Stuart, an orthopedic surgeon authorized by the employer/carrier (E/C). Dr. Stuart diagnosed a cervical lumbar strain and bursitis and treated claimant monthly until February 23, 1981. At that time, it was Stuart's opinion that maximum medical improvement (MMI) had been reached. He thus released the claimant and assigned a rating of 10% permanent partial disability (PPD). Claimant apparently attempted to work after that date, but returned to Dr. Stuart in a worsened condition in November 1981 and, on February 3, 1982, monthly orthopedic treatment was resumed. Dr. Stuart testified at the hearing that, based on claimant's worsened condition and the results of further medical examinations, his opinion was changed regarding the initial MMI date. Instead, he decided that claimant had not reached orthopedic MMI until August, 1983 at which time he assigned a 15 to 20% PPD rating. The doctor testified that, when claimant returned in February 1982, he was "really worse and having more problems, more pain, and he was unable to work." Dr. Stuart's testimony was such that it indicated both depression and orthopedic injuries as the cause of claimant's inability to work.
By March 1983, claimant's depression had reached a point where Dr. Stuart felt it necessary to recommend psychiatric treatment. Authorization for a Dr. Waldheim was requested from the E/C in March. A letter dated April 6, 1983 from claimant's attorney to the E/C's attorney was introduced into evidence at the hearing, confirming a "recent conversation" wherein the E/C had refused authorization of Dr. Waldheim. Claimant then began unauthorized psychiatric treatment with Dr. Stillman on April 14, 1983. The E/C's attorney did eventually schedule an appointment for an examination of claimant by a psychiatrist, Dr. Cohn, for May 16, 1983. However, the *417 DC determined this appointment to be in the nature of authorization for an independent medical examination, and found that psychiatric treatment was at no point authorized by the E/C.
Dr. Stillman, upon examination, diagnosed claimant as suffering from post-traumatic stress disorder, organic brain syndrome and petit mal epilepsy, all of which he attributed to the April 14, 1979 accident. His diagnosis was based upon his own examinations of the claimant and was confirmed by the results of tests performed by Dr. Berntson, a psychologist recommended by Dr. Stillman. Between July and November of 1983 claimant's psychiatric condition worsened to the extent that Dr. Stillman testified he could do nothing to help claimant short of anesthesia. By November 4, 1983 claimant had slipped into psychotic depression and was expressing thoughts of suicide. Claimant was hospitalized on November 10, 1983 and committed suicide on November 17, 1983.
Dr. Stillman testified that it was his opinion that, psychiatrically, by April 14, 1983, the date of his initial visit with Stillman, claimant had reached MMI and was permanently impaired. He also stated that claimant was unable to work not only during the period of Stillman's treatment, but from February 28, 1981 until his death on November 17, 1983. The doctor stated that claimant's inability to work from February 28, 1981 until April 14, 1983 (prior to his having treated claimant) was based upon his examination of claimant, the history given to him by claimant, corroboration of that history by claimant's family members, the nature of claimant's disorder, its natural history (which Stillman explained to be a "known entity"), and his personal experience as a psychiatrist working with such cases. Claimant's estate claimed TTD benefits from February 28, 1981 until November 17, 1983 with interest, wage loss and PTD benefits from the date of MMI with interest, payment of Drs. Stillman and Berntson's medical bills, costs and attorney's fees. The DC found as fact that the E/C had refused to authorize any psychiatric treatment for claimant, that such refusal was unreasonable, and that claimant's unauthorized treatment by Stillman and Berntson was reasonable and necessary. As to disability benefits, the DC found as fact that claimant was psychiatrically TTD from February 28, 1981 until April 14, 1983, psychiatrically PTD after April 14, 1983, and orthopedically TTD from February 3, 1982 until November 17, 1983. The E/C was ordered to pay Drs. Stillman and Berntson's medical bills with interest, TTD from February 28, 1981 until November 17, 1983 with interest, attorney's fees and costs. From this order the E/C appeal, raising two points of error.
The E/C first argue that there was no competent substantial evidence to support the commissioner's order to pay TTD from February 28, 1981 until November 17, 1983, finding fault with each of the three periods of disability reflected in the commissioner's order. As to the period of psychiatric TTD from February 1981 until April 14, 1983, the E/C argue that Dr. Stillman's opinion, though admittedly admissible, is nonetheless incompetent because it is unsupported by independent evidence. Appellant has cited for support several cases which stand for the proposition that a medical expert's opinion must be based upon evidence in the record, Geiger Distributors, Inc. v. Snow, 186 So.2d 507 (Fla. 1966), not upon facts or inferences not supported by evidence, Victoria Hospital v. Perez, 395 So.2d 1165 (Fla. 1st DCA 1981) or not independently proved. Lang Pools v. McIntosh, 415 So.2d 842 (Fla. 1st DCA 1982); Gold Coast Paving Co., Inc. v. Fonseca, 411 So.2d 259 (Fla. 1st DCA 1982). See also Arkin Construction Co. v. Simpkins, 99 So.2d 557 (Fla. 1957). Appellant contends that, as the claimant did not begin treatment with Dr. Stillman until April 14, 1983, Stillman's opinion that claimant was TTD during the two years prior to that date must necessarily have been based upon the history given to him by claimant. Further, since the claimant was unavailable to testify at the hearing, nor was his deposition placed into evidence, the accuracy of the history upon which Dr. Stillman based his opinion cannot *418 be tested and, thus, Stillman's opinion is not competent evidence.
While we do not dispute that the cases cited by appellant indeed stand for the proposition stated, we feel that those cases are distinguishable from the case at bar. The cases cited involved fact situations where a doctor based a causation opinion upon an assumption of the truth of a single fact or event. One of the clearest examples is Lang Pools v. McIntosh, supra, wherein the doctor testified that claimant's hip problems had come about as the result of a fall she suffered at work. The assumption that the claimant had suffered a fall, however, was totally unsupported by any evidence. Indeed, even the claimant's description of the accident did not include a fall. The case at bar involves a different situation. Dr. Stillman's opinion that claimant was unable to work due to his psychiatric condition as far back as February 1981 was based not upon a sole, unsupported fact, but upon a number of grounds, including his own expertise as a psychiatrist dealing with such illnesses. We believe Dr. Stillman's opinion was competent to support a finding of psychiatric TTD from February 28, 1981, until April 14, 1983.
As to the period of psychiatric TTD which the commissioner found to exist from April 14, 1983, until claimant's death, appellant argues that, as Dr. Stillman testified that claimant had reached MMI psychiatrically on April 14, 1983, any disability past that date must have been permanent in nature. We disagree. Dr. Stillman testified and the commissioner found as fact that psychiatric MMI was reached as of April 14, 1983, yet the DC also properly found that orthopedic MMI was not reached and the evidence shows that claimant was unable to work between April 1983 and his death in November 1983. This court has held that, where claimant has both psychiatric and orthopedic injuries, permanent disability benefits cannot be awarded prior to the claimant reaching MMI from both disorders. Southern Bell Telephone & Telegraph Co. v. Rollins, 390 So.2d 93 (Fla. 1st DCA 1980); South Carolina Ins. Co. v. Blackman, 380 So.2d 1144 (Fla. 1st DCA 1980). Therefore, we find that the award of TTD through November 17, 1983, is not inconsistent with the determination of prior psychiatric permanency.
Third, appellants claim that there was no basis for the commissioner's finding that claimant was orthopedically TTD from February 3, 1982 until November 17, 1983. We disagree and affirm that portion of the order. Although Dr. Stuart did testify, as appellant points out, that claimant could not work after February 1982 because he was not motivated to do so, Dr. Stuart also stated that, after claimant's return in November 1981 he was "having more problems, more pain, and he was unable to work." We believe there was sufficient evidence to support the commissioner's finding of orthopedic TTD.
Appellants next assert that the commissioner erred in ordering the E/C to pay the medical bills of Drs. Stillman and Berntson. The E/C deny that psychiatric services were not provided by them, and claim that Section 440.13(2)(b), Florida Statutes (1983) and City of Ft. Lauderdale v. Flanders, 416 So.2d 1234 (Fla. 1st DCA 1982) dictate that claimant should have sought authorization of Dr. Stillman prior to beginning treatment by him. Further, the E/C argue that claimant's failure to submit timely medical reports from Drs. Stillman and Berntson renders the claim for medical care invalid. We disagree with appellants' argument.
Section 440.13(2)(b) provides in pertinent part:
(b) If the employer fails to provide such treatment, care, and attendance after request by the injured employee, the employee may do so at the expense of the employer, the reasonableness and the necessity to be approved by a deputy commissioner. The employee shall not be entitled to recover any amount personally expended for such treatment or service unless he has requested the employer to furnish the same and the employer *419 has failed, refused, or neglected to do so or unless the nature of the injury required such treatment, nursing, and services and the employer or the superintendent or foreman thereof, having knowledge of such injury, has neglected to provide the same.
In the instant case, the E/C not only failed to provide psychiatric treatment after the initial request by claimant, but failed to authorize any psychiatric treatment. Therefore, claimant was entitled to seek unauthorized psychiatric care and later have the reasonableness and necessity of that action determined by the commissioner. The Flanders case cited by appellant may be clearly distinguished by the fact that there, although the E/C failed to authorize the doctor requested by claimant, it did provide alternative treatment. Therefore, claimant in that situation should have sought approval from the DC prior to beginning treatment. This court has made it clear that a claimant may seek unauthorized medical treatment where authorization has been requested and refused by the E/C. Cedars of Lebanon Health Care Center, Inc. v. Summerset, 409 So.2d 185 (Fla. 1st DCA 1982); Mayberry v. Sunland Training Center, 404 So.2d 810 (Fla. 1st DCA 1981).
Section 440.13(2)(b) further provides:
Nor shall any claim for medical, surgical, or other remedial treatment be valid and enforceable unless, within 10 days following the first treatment ... the health care provider or health care facility giving such treatment or treatments furnishes to the employer, or to the carrier if the employer is not self-insured, a report of such injury and treatment .. .; however, a deputy commissioner, for good cause, may excuse the failure of the health care provider or health care facility to furnish any report within the period prescribed... .
Although we find that claimant was justified in seeking treatment from Drs. Stillman and Berntson, we also note the absence of any consideration of "good cause" to excuse the failure to furnish timely medical reports as required by section 440.13(2)(b). This court has held such a finding to be essential to an award of medical bills where filing requirements have not been met. Walt Disney World Co. v. Schiebel, 397 So.2d 1004 (Fla. 1st DCA 1981); Broward Industrial Plating, Inc. v. Weiby, 394 So.2d 1117 (Fla. 1st DCA 1981). Therefore, we remand for a specific finding as to whether there was good cause to excuse the failure to comply with the statutory requirements.
The DC's findings of orthopedic TTD from February 3, 1982 until November 17, 1983, and psychiatric TTD from February 28, 1981 until April 14, 1983, are affirmed. The cause is remanded for the DC to rule on the question of whether the failure to furnish medical reports was excused for good cause.
MILLS, J., concurs.
WENTWORTH, J., concurs and dissents with opinion.
WENTWORTH, Judge, concurring and dissenting in part.
Affirmance of the entire order would in my opinion be the proper disposition of this appeal.
I would conclude that remand is not required in this case by the absence of an express finding of good cause for late medical reports to the carrier. The order did include factual and legal findings that the carrier rejected the psychiatric reference by the authorized treating orthopedic surgeon, failed to authorize any treatment therefor during the time the reports were delayed, and "acted unreasonably in refusing to authorize psychiatric treatment for this Claimant who eventually committed suicide due to his psychiatric problems which were caused by the compensable accident." Although appellate review would certainly be aided by a deputy's clear identification *420 of good cause for excusing late or absent reports, I would find remand to be unnecessary here. "The fact that the [deputy] entered the award for claimant necessarily showed that [she] was satisfied as to every essential requisite to sustain the finding. The burden of showing harmful error is thereafter with him who challenges the award." Meehan v. Crowder, 158 Fla. 361, 28 So.2d 435 (1947). The rule with respect to such orders was stated in an early opinion: "[U]nless it can be said that the deputy's holding was erroneous ... his order should not be reversed. It is the settled practice of this court to affirm... if the result is justified on any ground appearing in the record." Escarra v. Winn Dixie Stores, Inc., 131 So.2d 483 (Fla. 1961).
The record facts surrounding the brief delay in reports in the present case do not show that the carrier's "receipt of prompt and accurate medical information was necessary to avoid the risk of inflated medical bills and duplicative treatment, as well as to facilitate any decision ... to rescind a previous denial of benefits." Walt Disney World Co. v. Schiebel, 414 So.2d 602 (Fla. 1st DCA 1982). Instead, the evidence seems to me to be well within the principle applied in recent decisions holding that a failure to honor reporting requirements may be excusable upon evidence "that the employer [carrier] has conducted itself so inconsistently as to have waived its right to rely on those requirements as a defense to the claim" for payment, and requiring some indication that a carrier was "prejudiced by the reporting failure; that prejudice is not presumed, because [carrier] had the ability to obtain, if it wished, any material information concerning the employee's condition." Watson v. Freeman Decorating Co., 455 So.2d 1097 (Fla. 1st DCA 1984). See also Willard Kaufman Co. v. Rawlings, 414 So.2d 641 (Fla. 1st DCA 1982); and Ranch House v. Jackson, IRC 2-3824, citing Foster v. Cooper, 143 Fla. 493, 197 So. 117 (1940), and Ringling Brothers v. Jones, 134 So.2d 244 (Fla. 1961).