559 So.2d 399 (1990)
Raymond SCOTT, Appellant,
v.
CONTAINER CORPORATION OF AMERICA and Fred S. James and Company of Florida, Appellees.
No. 89-639.
District Court of Appeal of Florida, First District.
April 10, 1990.
Frederic M. Schott of Meyers and Mooney, P.A., Orlando, for appellant.
Thomas S. Edwards, Jr., and Bradley R. Johnson, Jacksonville, for appellees.
ZEHMER, Judge.
Raymond Scott, claimant, appeals a workers' compensation order denying in its entirety his claim for temporary total disability, permanent total disability, temporary partial disability, or permanent wage loss benefits, evaluation and treatment through a rehabilitation program, and costs and attorney's fees.
Employer and carrier acknowledge that they owe claimant temporary total disability benefits pursuant to section 440.15(2), *400 Florida Statutes (1987), from May through August of 1987, so the order must be reversed to the extent that it denies temporary total disability benefits for that period.
The order must also be reversed to the extent that it denies claimant's entire claim. Although the record supports the judge's denial of total disability benefits, either as a continuation of temporary total disability benefits previously ordered[1] or an award of permanent total disability benefits, the record does not support the denial of all claims. The indications by both Dr. MacMillan and the Casa Colina medical records (both of which were relied on by the judge below) that claimant can return to work only with some retraining are patently inconsistent with claimant having reached maximum medical improvement with no permanent impairment; yet, the legal effect of the ruling denying claimant's entire claim is that he has reached maximum medical improvement with no permanent impairment.
Claimant requested either temporary partial disability benefits (temporary wage loss benefits)[2] or permanent wage loss benefits[3] as an alternative to temporary total disability or permanent total disability benefits. To be entitled to temporary partial disability benefits pursuant to section 440.15(4), an injured employee must have partially recovered his ability to work but must not have reached maximum medical improvement. Ringling Brothers v. O'Blocki, 496 So.2d 947 (Fla. 1st DCA 1986). An injured employee who has reached maximum medical improvement and is suffering from a permanent impairment, but is only partially disabled from working, may be entitled to permanent wage loss benefits pursuant to section 440.15(3)(b). Cumberland Farm Food Stores v. Meier, 408 So.2d 700 (Fla. 1st DCA 1982). As a prerequisite to entitlement to either temporary or permanent wage loss benefits, however, the claimant, to demonstrate that such disability has prevented him from obtaining gainful employment, must either conduct a good faith work search or be excused from making such a search. Griffith v. McDonalds, 526 So.2d 1032 (Fla. 1st DCA 1988); Piccadilly Cafeteria v. Polite, 433 So.2d 591 (Fla. 1st DCA 1983).
There is no basis for concluding that claimant has reached maximum medical improvement. This record contains no opinion from any doctor nor statement in any medical records that claimant has reached maximum medical improvement or that he has no permanent impairment, and the record does not support inference of either fact. The only medical evidence regarding claimant's condition subsequent to the prior, non-appealed order finding claimant temporarily totally disabled[4] is found in the records of Casa Colina and the deposition and records of Dr. MacMillan. Both Dr. MacMillan and the Casa Colina records indicate that claimant can return to work if he initially limits his work day to six hours and completes some kind of work reentry program. This restriction indicates the presence of some medical impairment. Dr. MacMillan diagnosed claimant as suffering from myofascial pain syndrome,[5] and the *401 record does not contain any evidence that disputes this diagnosis. Dr. Visconti's and Uricchio's statements that they found no objective basis for claimant's complaints do not conflict with Dr. MacMillan's diagnosis. First, nothing in the record proves that myofascitis would necessarily exhibit symptoms that are subject to objective findings. Second, Drs. Visconti and Uricchio examined claimant approximately two years prior to the earlier, non-appealed order that found claimant temporarily totally disabled by a then-existing medical impairment and well prior to claimant's participation in the Casa Colina program. Thus, their records do not constitute competent, substantial evidence of claimant's present condition. See Walker v. Allied Septic Tanks, 522 So.2d 456 (Fla. 1st DCA 1988); Romero v. Waterproofing Systems of Miami, 491 So.2d 600 (Fla. 1st DCA 1986); Reynolds v. Neisner Brothers, Inc., 436 So.2d 1070 (Fla. 1st DCA 1983). The only fair construction of the medical evidence in this record is that claimant still suffers some degree of impairment and either has not reached maximum medical improvement or has reached maximum medical improvement with some degree of permanent impairment.
Regarding employer and carrier's argument that claimant failed to conduct an adequate work search, the record contains no evidence indicating that a doctor told claimant he was released to return to work after leaving Casa Colina. Appellees' reference to an incident in May of 1985 when employer sent claimant a letter directing him either to return to work or be terminated proves nothing. At that time, claimant returned to work and re-injured his back. Dr. Visconti's records show that after the re-injury he placed claimant back on complete bed rest. This incident occurred before the claimant was found temporarily totally disabled in the 1987 order and thus was not competent to prove claimant had been released for work at or subsequent to his release from the Casa Colina program. Claimant specifically testified that no doctor had informed him that he could return to work. Claimant maintains that employer and carrier never informed him of his responsibility to conduct a work search, and employer and carrier did not present any competent evidence to dispute this fact. Since employer and carrier did not show that claimant had been informed of his release to work and of his responsibility to perform a work search, and since the record does not support a finding that claimant has reached maximum medical improvement without permanent impairment, the record fails to support the judge's denial of wage loss benefits, either for temporary disability or permanent disability, for the period of May 1988 through the date of the hearing.
Therefore, we reverse the order with directions to award wage loss benefits for the period of May 1988 through the date of the hearing. We remand with directions to determine whether claimant has reached maximum medical improvement and is entitled to temporary partial disability or permanent wage loss benefits. See Morris v. Metal Industries, 491 So.2d 312 (Fla. 1st DCA 1986).
In light of our reversal on the above issue, we also reverse the judge's refusal to award claimant costs and attorney's fees. We expressly leave open for further consideration claimant's entitlement to evaluation and treatment through the Star Rehabilitation Program.
REVERSED AND REMANDED for further proceedings consistent herewith.
BOOTH and NIMMONS, JJ., concur.
NOTES
[1] On June 16, 1987, the judge ordered employer and carrier to provide claimant with treatment at Casa Colina Comprehensive Back Services (Casa Colina), and to pay claimant temporary total disability benefits until he completed the Casa Colina treatment and continuing thereafter so long as he remained temporarily totally disabled. Employer and carrier did not appeal this order.
[2] § 440.15(4)(a), Fla. Stat. (1987). Temporary partial disability benefits are based on actual wage loss suffered during the period of such temporary disability.
[3] Wage loss benefits pursuant to section 440.15(3)(b) may be referred to as "permanent" be cause the claimant receiving such benefits must have reached maximum medical improvement with some permanent impairment.
[4] See footnote 1.
[5] The doctor did not explain precisely what he meant by this term; however, we are confident it was used in the following sense. The word "myo" is a "combining form denoting relationship to muscle." Dorland's Illustrated Medical Dictionary 860 (26th ed. 1985). The word "fascial" means "pertaining to or of the nature of a fascia." Id at 488. The word "fascia" means "a sheet or band of fibrous tissue such as lies deep to the skin or forms an investment for muscles and various organs of the body." Id. at 487. "Myofascitis" is defined as the "inflammation of a muscle and its fascia, particularly of the fascial insertion of muscle to bone." Id. at 861. Thus, myofascitis commonly is used to describe "low back pain of obscure pathology, with symptoms severe enough to indicate probable inflammatory origin." Blakiston's New Gould Medical Dictionary 772 (2d ed. 1956).