JOANOS, Judge.
Claimant in this workers’ compensation case appeals the order of the judge of compensation claims dismissing with prejudice his claim for compensation benefits, remedial treatment, and reimbursement for medical expenses. The issues for review are whether there is competent substantial evidence to support the judge’s findings with regard to the date of maximum medical improvement and the determination that claimant’s 1987 injury bears no relationship to his 1985 industrial injury, the applicability of the statute of limitations, and the denial with prejudice of the claim for compensation benefits. We reverse the finding that claimant reached maximum medical improvement on January 20, 1986.
On October 13, 1985, claimant injured his right knee in the course and scope of his employment with Fifth Avenue Night Club. The injury was accepted as compensable, and claimant was treated by Dr. Brodrick, an orthopedic surgeon. Dr. Brodrick’s office note of November 15, 1985, stated that claimant continued to have pain in his right knee, and that the knee also gave way and buckled. Dr. Brodrick diagnosed a torn medial meniscus, and recommended arthroscopic surgery. The doctor’s office note of November 9, 1985, indicated that the recommended surgery had been performed, and that the “[sjurgery went fairly smoothly.” Dr. Brodrick’s office note of January 20, 1986, stated that claimant reported his right knee felt good, and that it had ceased swelling. The doctor’s examination of that date stated that claimant had good liga-mentous stability, without tenderness, and concluded with the statement: “He’s discharged. He has done well.”
In June 1987, claimant’s right knee gave way as he was playing basketball on his own. Claimant returned to Dr. Brodrick for treatment. Dr. Brodrick's office note dated June 30, 1987, stated in part:
IMPRESSION: Sprain right knee. Status post op arthroscopic surgery right knee.
Dr. Brodrick’s office note dated July 27, 1987, indicates that claimant’s condition had improved since the prior visit, but he reported continued discomfort in his right knee, together with a tendency of the knee to give way.
In 1988, claimant’s knee again gave way, this time while he was playing softball. Claimant described the incident thusly: “It was like stepping in a hole and it just gave out.... Like nothing was there, when I went to put my foot down. It just collapsed.” When asked to compare the knee problems he experienced playing basketball and softball with the original accident and knee injury while working for the employer Park Avenue Night Club, claimant stated:
As if I had no mobility. The same thing and it was useless. I couldn’t use my knee at all.
It kept giving out. It was very weak. I couldn’t put no pressure on it.
[[Image here]]
All three times. It was the same. To this day, it’s still the same. (Emphasis supplied).
*932 On November 21, 1988, claimant underwent a second arthroscopy with meniscec-tomy. He was unable to work for approximately five to six weeks following this surgery. In a letter to the employer/carrier dated April 28, 1989, Dr. Brodrick advised that claimant needed to undergo a third surgery, i.e., arthroscopic reconstruction of his anterior cruciate ligament. Dr. Brodrick’s letter further stated that the necessity for the surgery was attributable to claimant’s knee surgery of 1986.
Claimant’s hearing testimony reflects that he has not been symptom free since the original accident and knee injury. He said that he missed very little time from work, because he could not afford to stay off work. Claimant further testified that he tried to claim workers' compensation benefits after his second surgery, but the carrier had advised that it would not be responsible for anything after claimant was cleared to return to work following treatment for the 1985 industrial injury. Consequently, claimant and his mother paid all medical expenses incurred with regard to treatment of claimant’s right knee after his medical discharge from the first accident.
In the appealed order, the judge of compensation claims found that claimant reached maximum medical improvement with regard to his 1985 compensable industrial accident on January 20, 1986. The judge further found that claimant suffered a separate, intervening and unrelated accident on June 23, 1987, when he hyperex-tended his right knee while playing basketball. The order notes that claimant paid for medical treatment for the second knee injury, and filed no request with the employer/ carrier for medical treatment. The judge found that claimant’s request for medical treatment in September 1988 for the third accident to his right knee was barred by the statute of limitations, in that the last authorized medical treatment related to the industrial injury was rendered January 20, 1986. Concluding that more than two years had elapsed since claimant last sought medical treatment relating to his 1985 industrial injury, the judge found the 1988 claim was barred by the statute of limitations. Due to his determination that the 1988 claim was time-barred, the judge made no finding with regard to the relationship of the 1988 injury to the 1985 industrial injury. Rather, the claim for benefits was denied and dismissed with prejudice.
We reverse the judge's finding that claimant attained maximum medical improvement on January 20, 1986, because the record contains no competent substantial evidence to support such finding. “The date of maximum medical improvement marks the point after which no further recovery or improvement from an injury or disease can be reasonably expected.” Cheuvront v. File One Office Supplies, 551 So.2d 1221, 1223 (Fla. 1st DCA 1989). A determination that maximum medical improvement has been achieved should ordinarily be based upon a clear, explicit expression of that fact set forth in medical records or medical opinion testimony. Scott v. Container Corporation of America, 559 So.2d 399, 400 (Fla. 1st DCA 1990); Sprague v. Sarasota Palm Hospital, 550 So.2d 58, 59 (Fla. 1st DCA 1989); Walker v. Allied Septic Tanks, 522 So.2d 456 (Fla. 1st DCA 1988); Johnson v. United Parcel Service, 513 So.2d 1336, 1337 (Fla. 1st DCA 1987). A maximum medical improvement determination should not be confused with a finding that a claimant is able to return to work. The fact that a claimant has been released to return to work without restrictions does not mean that he or she has attained maximum medical improvement, nor does it mean that the claimant has suffered no physical impairment. Johnson, 513 So.2d at 1337, citing 2 A. Larson, The Law of Workmen’s Compensation § 57.12(d) (1986).
The medical evidence in this record consists solely of the office notes prepared by Dr. Brodrick, the authorized orthopedic surgeon who rendered treatment for claimant’s compensable knee injury in October 1985, and who also treated claimant’s 1987 and 1988 right knee problems. The employer/carrier acknowledged that Dr. Bro-drick was still an authorized physician *933 when he treated claimant for the 1987 and 1988 injuries. In this case, as in Sprague v. Sarasota Palms Hospital, the doctor did not testify by deposition or at the hearing. Presumably, the judge’s finding that claimant reached maximum medical improvement on January 20, 1986, was based on Dr. Brodrick’s office note of that date. This office note indicates that as of that date, claimant’s right knee revealed good ligamentous stability, with no tenderness, that claimant had done well following arthroscopic surgery, and that he was discharged from Dr. Brodrick’s care. However, the office note contains no express statement that maximum medical improvement had been reached, and makes no reference to the existence or absence of a permanent physical impairment, from which maximum medical improvement might be inferred. See, generally, St. Johns River Shipbuilding Co. v. Wells, 156 Fla. 67, 22 So.2d 632 (1945).
It is clear that Dr. Brodrick’s office note of January 20, 1986, does not contain the clear, explicit statement that maximum medical improvement had been achieved which would support a finding of maximum medical improvement, see Scott v. Container Corp. of America; Cheuvront v. File One Office Supplies; Sprague v. Sarasota Palm Hospital; Walker v. Allied Septic Tanks; Johnson v. United Parcel Service, nor is there any reference to permanent impairment from which maximum medical improvement could be inferred. See St. Johns River Shipbuilding Co. v. Wells.
Therefore, this finding is reversed and remanded with directions to determine whether claimant has reached maximum medical improvement, and if so, the date of maximum medical improvement. On remand, the judge is directed to take such further evidence necessary to make this determination.
We find it unnecessary to discuss the remaining issues raised by claimant, since our decision with regard to the issue of maximum medical improvement will require the judge to reconsider these matters. We note, however, that if the judge finds that claimant has not achieved maximum medical improvement, he should make such further findings necessary to determine whether any part of the medical care provided in 1987 was related to the compen-sable injury. If such proves to be the case, the instant claim for medical treatment and compensation benefits is not time barred, and should be reconsidered by the judge. The fact that an employee paid for remedial treatment himself is not conclusive since it is .the furnishing of treatment within the two-year limitations period which will toll the statute. McNeilly v. Farm Stores, Inc., 553 So.2d 1279 (Fla. 1st DCA 1989). In this regard, we are not unmindful of the dearth of evidence offered in support of the claim for medical and compensation benefits, and the attendant difficulty this minimal evidence poses for the decisionmaker. Therefore, we reiterate that on remand, the judge is authorized to receive such additional evidence he deems necessary to decide the case.
Accordingly, this cause is reversed and remanded.
SHIVERS, C.J., and MINER, J., concur.