PER CURIAM.
The Employer/Carrier (“E/C”) appeal from an order of the Judge of Compensation Claims (“JCC”) awarding temporary partial disability (wage-loss) benefits, wage-loss benefits, payment of medical bills, and interest, and imposing penalties. The E/C do not challenge the award of temporary partial disability benefits. Section 440.15(4)(a), Florida Statutes (Supp. 1988). We affirm the order in all respects except for the award of wage-loss benefits, which was premature because Claimant had reached maximum medical improvement (“MMI”) only for his orthopedic condition but not for his psychiatric condition. Copeland Steel v. Miles, 536 So.2d 1179, 1180-81 (Fla. 1st DCA1989); Fuchs Baking Co. v. Estate of Szlosek, 466 So.2d 415 (Fla. 1st DCA1985); Cumberland Farm Food Stores v. Meier, 408 So.2d 700 (Fla. 1st DCA1982). See section 440.15(3)(b), Florida Statutes (Supp.1988).
In the interest of judicial efficiency relating to proceedings likely to arise concerning Claimant’s entitlement to wage-loss benefits, we must comment on the E/C’s first argument as to whether Claimant’s 1989 accident meets the statutory requirements governing “permanent impairment.” A recitation of key facts is necessary. Claimant, Daniel Smith, has a history of work-related back injuries. In 1982, he commenced treatment with Dr. Hinds, an orthopedic surgeon, for his back problems generally, not for any specific injury. Hinds performed a spinal fusion in 1985 in the same area involved in Claimant’s 1967 surgery. Claimant was deemed to have reached MMI on February 8, 1985, and Hinds released him with a 25% permanent impairment and restrictions upon lifting more than 50 pounds. Following the discharge, Claimant returned to employment.
In 1989, he went to work for Appellant/Employer, initially as a mechanic’s helper and later as a semi-tractor trailer truck driver. On August 16, 1989, in the course and scope of employment, Claimant was involved in a vehicular collision. He returned to Dr. Hinds for treatment beginning in September 1990. The doctor re *1050 leased him on November 21, 1990, for “regular duty with restrictions”: a 25% permanent impairment rating and a lifting limit of 50 pounds, with no prolonged bending or stooping and no overhead reaching or climbing. Dr. Hinds considered the 1990 restrictions to be “no worse than the restrictions in the February of 1985 release.” Hinds last saw Claimant on January 9, 1991, and felt he was orthopedically at MMI then. Hinds testified that Claimant could work in a position like the one with Employer, but that he could not do so symptom-free because of the presence of truck vibrations and the necessity of long periods -of sitting during inter-city travel. The doctor acknowledged that Claimant is “at a higher risk for recurrent problems” if he resumes his prior work activities. Asked whether Claimant can physically perform his prior duties, Hinds responded affirmatively. However, he qualified that pronouncement as follows: “Is he going to be successful doing them? I doubt it.” Given Claimant's past medical history and his back condition, Dr. Hinds testified that what Claimant has to do, in addition to driving, constitutes factors that are going to determine how long he can engage in that activity. He stated, within a reasonable degree of medical probability, that after the 1989 accident, the length of time Claimant could engage in various employ-mental activities would be diminished when compared to the facts upon discharge in 1985.
Before the 1989 accident, Claimant’s work frequently required him to drive uninterruptedly for periods of up to ⅛⅜ hours because- of the rigid timetable for delivery of baked goods in southern and central Florida. Due to medication prescribed for a psychiatric condition that developed following the 1989 accident, Claimant experiences drowsiness as a side effect. He testified that during simulated driving procedures, he could not sit for more than 1¼ hours. Dr. Trapana, an orthopedic surgeon, recommended that Claimant not drive long distances because of the back problems. We find the record supports the finding that
Claimant’s current physical restrictions prevent him from driving a semi-tractor trailer continuously in excess of two hours. Additionally, Claimant’s current medication can cause drowsiness, which would be unacceptable if operating heavy equipment or a semi-tractor trailer.
Wage-loss benefits were awarded from May 21, 1991, through the date of hearing, excluding the period during which Claimant received temporary total disability benefits by stipulation. The crux of the E/C’s challenge to the wage-loss award is that the JCC failed to make a finding on whether Claimant sustained an increase in permanent impairment due to the 1989 industrial accident. The E/C rely primarily on the fact that the 1985 and 1990 permanent impairment ratings were both 25%, and the lifting restrictions the same, to support their conclusion that Claimant failed to demonstrate a statutory basis for wage-loss benefits. Section 440.15(3)(b)(l), Florida Statutes (Supp.1988), provides in pertinent part:
Each injured worker who suffers any ;permanent impairment, which permanent impairment is determined pursuant to the schedule adopted in accordance with subparagraph (a)3., may be entitled to wage-loss benefits under this subsection.
(Emphasis added.) See C.A. Carroll Constr. Co. v. Long, 397 So.2d 751, 753 (Fla. 1st DCA1981); Krispy Kreme Doughnut Co. v. Pipkins, 389 So.2d 1243 (Fla. 1st DCA1980); Agrico Chemical Co. v. Laws, 384 So.2d 722 (Fla. 1st DCA1980) (reversing award for loss of wage-earning capacity, absent any finding in the order that the claimant sustained “any permanent anatomical impairment”). Having considered other competent substantial medical evidence, supplemented by Claimant’s own testimony, demonstrating that Claimant suffered permanent impairment in 1989, we cannot agree with the E/C that Dr. Hinds’ ratings and restrictions necessarily precluded entitlement to wage-loss benefits. See Jackson v. Publix Supermarkets, Inc., 520 So.2d 50, 51 (Fla. 1st DCA1987); Dade County Sch. Bd. v. Gibavitch, 397 So.2d *1051 1142 (Fla. 1st DCA1980) (no award of loss of wage-earning capacity can be made, absent a finding the claimant sustained “permanent anatomical impairment”).
Reversal of the award of “permanent” wage-loss benefits is required, however, pursuant to Fuchs Baking Co., supra, in which we held that where a claimant has both orthopedic and psychiatric injuries, permanent disability benefits cannot be awarded prior to the claimant’s reaching MMI from both disorders. Id., 466 So.2d at 415, 418; Scott v. Container Corp. of America, 559 So.2d 399, 400 n. 3 (Fla. 1st DCA1990); Cumberland Farm Food Stores, 408 So.2d at 700. Dr. Hinds testified that Claimant had reached orthopedic MMI. The testimony of Claimant’s psychiatrist, Dr. De La Vega, however, demonstrated that he had not reached psychiatric MMI at the time of the last visit in July 1991. The E/C’s reliance on Dr. De La Vega’s other testimony stating that Claimant could return to work is misplaced, as the doctor’s recommendation was expressly conditioned on Claimant’s suitable response to required medication, without adverse side effects that would affect his ability to perform on the job. Claimant remained subject to “the restrictions of the medications.” Although he apparently failed to disclose this fact to his psychiatrist, Claimant testified that he is subject to periods of drowsiness because of the medication.
The award of wage-loss benefits is REVERSED. The order is AFFIRMED in all other respects.
SMITH, BARFIELD and MICKLE, JJ., concur.